IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ROBERT TABER,
       Petitioner,

vs.                                        Case No.: 3:05cv180/MCR/EMT

JAMES R. McDONOUGH,[1]
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 11).  Petitioner filed a reply (Doc. 13).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties.  On October 22, 2001, Petitioner was charged by amended information with robbery with a firearm, grand theft, aggravated assault, possession of a firearm by a convicted felon, leaving the scene of an accident involving property damage, and violation of restricted driver's license (Doc. 11, Ex. A).  On March 18, 2002,

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

Petitioner signed a written sentence recommendation involving those charges as well as charges in two unrelated pending cases (*id.*, Ex. B).  The State dropped the grand theft charge, and Petitioner agreed to plead straight-up to the remaining charges, leaving sentencing to the discretion of the judge, but with the opportunity for Petitioner to present evidence in mitigation (*id.*, Ex. B).  The same day, Petitioner pled nolo contendere on all remaining counts in all cases in the Circuit Court in and for Escambia County, Florida (*id.*, Ex. C).  On March 3, 2003, Petitioner was sentenced as follows: to a mandatory minimum sentence of ten years for robbery with a firearm, with concurrent terms of three years for the aggravated assault and possession of a firearm by a convicted felon, and with time-served for the misdemeanors (*id.*, Ex. D at 56–61).  Petitioner was given credit for one year and 253 days time-served (*id.*, Ex. D at 62).

On direct appeal to the Florida First District Court of Appeal ("First DCA"), Petitioner's counsel filed an <u>Anders</u>[2] brief summarizing the plea agreement and sentencing, asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, and requesting that the First DCA allow Petitioner a reasonable period of time in which to file his own brief (*id.*, Exs. G, H).  On June 25, 2003, the First DCA granted Petitioner thirty days to file a pro se brief (*id.*, Ex. H).  On October 8, 2003, the First DCA affirmed Petitioner's conviction and sentence per curiam without written opinion, with the mandate issuing November 4, 2003 (*id.*, Ex. J).  <u>Taber v. State</u>, 857 So. 2d 884 (Fla. 1st DCA Oct. 15, 2003) (Table).

On June 24, 2004, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting one claim of ineffective assistance of counsel (Doc. 11, Ex. K).  On August 20, 2004, the trial court denied Petitioner's Rule 3.850 motion on the merits (*id.*, Ex. L).  The trial court entered an amended order denying Petitioner's motion on August 27, 2004 (*id.*, Ex. M).  Petitioner appealed to the First DCA, which affirmed per curiam without opinion on February 14, 2005 (*id.*, Ex. Q).  Petitioner's motion for clarification or certification was denied (*id.*, Ex. R), and the mandate issued on April 14, 2005 (*id.*, Ex. S).  <u>Taber v. State</u>, 896 So. 2d 751 (Fla. 1st DCA Feb. 14, 2005) (Table).

---

[2]<u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

Petitioner filed the instant habeas action on May 11, 2005 (*see* Doc. 1 at 16).  Respondent concedes that the petition is timely and that Petitioner exhausted his state remedies (Doc. 11 at 6, 12).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[3]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different

from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claim.

III.   PETITIONER'S CLAIM

Ground one: Trial counsel was ineffective for misleading Petitioner in the amount of prison time Petitioner would serve upon pleading to said charges

(Doc. 1 at 5).  Petitioner alleges that after he was charged, police detectives asked him if he had any knowledge of a murder involving Mr. Trimuar (*id.* at 6).  Petitioner spoke with his counsel, who advised him that if he wished to "cooperate for a possible leniency plea bargain," then counsel would make "proper arrangements to do so" (*id.*).  Petitioner told his counsel of two prior murder cases in which he had assisted police Detective Cotton and said that he would be willing to cooperate with the police for a possible leniency plea (*id.*).  After this conversation, Petitioner answered detectives' questions about the murder involving Trimuar, and the State took Petitioner's deposition (*id.* at 7).  Petitioner's counsel told him that he was negotiating a plea bargain and that

the State would give a "substantial assistance" recommendation in exchange for Petitioner's cooperation in the murder case (*id.* at 8).  Petitioner alleges that he pled to the court regarding his criminal cases, and his counsel assured him he would receive the plea to which the State agreed, "which consisted of 3 years prison, 5 years probation and restitution" (*id.*).

After the plea hearing but before sentencing, the judge held a conference to discuss Petitioner's case (*id.* at 8–9).  The State advised the judge that Petitioner was willing to testify in a pending murder case involving Trimuar (*id.* at 9).  Later, Petitioner was brought to the holding cell at the county jail (*id.*).  Trimuar was in the holding cell, and he advised Petitioner that he had to take a plea in his case because of Petitioner's willingness to testify (*id.*).  Trimuar further stated that he agreed to the State's plea offer only if Petitioner would not receive any substantial leniency for his help in the plea (*id.* at 10).

At the sentencing hearing, "Petitioner was approached by counsel and said that Petitioner was going home with said mentioned plea herein.  Subsequently, moments latter [sic] counsel approached Petitioner and told Petitioner that the plea no longer stood and that he would fuss a little but to still accept the sentence because he would receive a sentence under the mandatory for which the state was seeking.  Petitioner due to emtional [sic] distress and family duress choose to accept his counsel's advise [sic] and accept the plea" (*id.*).  Petitioner states that he does not wish to withdraw his plea but only to receive the sentence "promise [sic] by his counsel and set forth in Exh. A" (*id.* at 13).  Exhibit A to the petition states that "The agreement was that we could argue for anything less than the 10 year minimum mandatory based upon [Petitioner's] substantial assistance" (*id.*, Ex. A).

1.    Clearly Established Supreme Court Law

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, a petitioner must establish (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688, 104 S. Ct. at 2064, 2068.  If a petitioner fails to make

a showing as to either performance or prejudice, he is not entitled to relief.  <u>Strickland</u>, 466 U.S. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances."  <u>Strickland</u>, 466 U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of  unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the  facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann v. Richardson</u>, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 690; *see also* <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053 (11th Cir. 1999); <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Indeed,

Petitioner must demonstrate that counsel committed "serious derelictions" of his duty.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  Stano, 921 F.2d at 1152 (citations omitted).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance.  To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.  See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991).  Conclusory, after-the-fact statements do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer.  See United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Diaz, 930 F.2d at 835; Toro, 940 F.2d at 1068; Key v. United States, 806 F.2d 133, 139 (7th Cir. 1987).

## 2. Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because counsel misrepresented the length of the sentence Petitioner would serve if he pled guilty (Doc. 1 at 4). Petitioner raised this claim in his Rule 3.850 motion (Doc. 1, Ex. K).

In its written decision denying Petitioner's claim, the state court made several factual findings.  First, it found that Petitioner's sentencing recommendation bears two hand-written notations setting forth "Straight-up plea to court's discretion; PSI ordered" and "Defense to present evidence of client's substantial assistance to law enforcement for *possible* downward departure for *court's consideration*" (Doc. 11, Ex. M at 52; *see also id.*, Ex. B) (emphasis added by state court). Additionally, Petitioner's "exhibit" memorializing the plea agreement states that "The agreement

was that we could ***argue*** for anything less than the 10-year minimum mandatory based upon the above-mentioned substantial assistance" (*id.*, Ex. M at 52; *see also id.*, Ex. K at 16; Doc. 1, Ex. A) (emphasis added by state court).  The trial court found that neither of these documents indicate that Petitioner was told that he would definitely receive a sentence of fewer than ten years if he provided substantial assistance (Doc. 11, Ex. M at 52).

Second, the state court found that at the beginning of the plea, defense counsel stated "my client is going to enter a plea of nolo contendere.  It's a straight-up plea at the Court's discretion" (*id.*, Ex. M at 52; *see also id.*, Ex. C at 9).  Petitioner acknowledged that the plea was straight-up to the court (*id.*, Ex. M at 52; *see also id.*, Ex. C at 13).  Next, the State outlined the possible sentences for each of the crimes charged, and the court asked Petitioner whether he realized that the court could sentence him to the maximum sentence for each count and that the sentences could run consecutively (*id.*, Ex. M at 52–53; *see also id.*, Ex. C at 15–17).  Petitioner stated that he understood (*id.*, Ex. M at 53; *see also id.*, Ex. C at 17).  Later, the State reiterated its position: "Just to be clear . . . the State will be recommending the ten years because of the 10-20-Life legislation," and defense counsel replied, "My client is very aware of that, Your Honor.  We've discussed it at length" (*id.*, Ex. M at 53; *see also id.*, Ex. C at 18).  In response to the court's questions, Petitioner replied that nobody had promised him anything and that he was satisfied with his attorney's services (*id.*, Ex. M at 53; *see also id.*, Ex. C at 19).

Next, the state court found that at the beginning of Petitioner's sentencing, defense counsel advised Petitioner on the record that "it's certainly up to [Petitioner] whether he wants to go forward or not, but my advice at this time to him would be for us to put this back on the trial docket, specifically if he's looking at 10 years anyway.  Obviously this Court could sentence him way up to—it's a first-degree felony punishable by life" (*id.*, Ex. M at 53; *see also id.*, Ex. D at 37–38).  Further, defense counsel stated, "If he does want to proceed to sentencing today—I'll leave that up to [Petitioner], but, obviously, he's looking at that ten-year minimum mandatory if we go forward today.  As his attorney of record, Your Honor, on his behalf, I feel it's in his best interest to reset it for trial" (*id.*, Ex. M at 53; *see also id.*, Ex. D at 38).  The court indicated three separate times that it was willing to investigate whether a motion to withdraw plea would be in order (*id.*, Ex. M at 53;

*see also id.*, Ex. D at 43, 51, 60).  However, Petitioner chose to proceed with the plea anyway and was advised of his right to appeal the proceedings (*id.*, Ex. M at 53–54; *see also id.*, Ex. D at 60, 62).

Finally, the state court found that nothing in the record indicates that there was a plea agreement for a reduction of the minimum mandatory (*id.*, Ex. M at 54).  Instead, the State merely left the option of a lesser sentence open, pending review of the applicable case law by defense counsel and the court (*id.*, Ex. M at 54).  After review of the case law, the court determined that it could not depart from the minimum mandatory (*id.*, Ex. M at 54; *see also id.*, Ex. D at 35, 42, 59).

Based on these factual findings, the state court concluded that the "record plainly refutes [Petitioner's] claim that Defense Counsel assured him a sentence less than the minimum mandatory. [Petitioner] was warned several times of the minimum mandatory, and was given the opportunity to move to withdraw his plea.  He chose not to avail himself of that option, and cannot now be heard to complain that his understanding was any different than that which is apparent from the face of the record" (*id.*, Ex. M at 54).

Initially, this court defers to the state court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable.  *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2).  Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").  Moreover, the Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977).  Thus, Petitioner's statements under oath at his sentencing are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  *Id.*

Next, this court must accept the trial court's legal finding that it could not sentence Petitioner to fewer than the mandatory minimum ten years, because it was a finding based on state law. "[S]tate courts are the ultimate expositors of state law," and federal courts must therefore abide by

their rulings on matters of state law.  Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); Herring v. Secretary, 397 F.3d 1338, 1354–55 (11th Cir. 2005); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

The remaining question is whether the trial court's denial of Petitioner's ineffective assistance of counsel claim was contrary to or resulted in an unreasonable application of Strickland. Although the state court denial of Petitioner's claim provides no guidance to this court in determining the legal standard it used in making its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable.  *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

Regarding the first prong of Strickland, Petitioner has failed to show that his counsel's performance was deficient.  First, defense counsel investigated Petitioner's options and advised Petitioner of the merits of those options.  Petitioner admits that defense counsel advised Petitioner to cooperate with the State in return for a lower sentence recommendation and bargained with the State for a plea bargain.  Ultimately, counsel's efforts were successful: while Petitioner could have been sentenced to a maximum of life, the State recommended the mandatory minimum of ten years and the court accepted that recommendation.  Thus, as a result of counsel's efforts, Petitioner received the lowest sentence possible.  Next, defense counsel vigorously argued for an even lower sentence.  At the sentencing hearing, even though the judge found that she was required to sentence Petitioner to at least ten years, defense counsel repeatedly argued for a downward departure (*see* Doc. 11, Ex. D at 36–38, 49–50).  Similarly, defense counsel attempted to have the State amend the information to allow a lesser sentence (*see id.*, Ex. D at 35).  Finally, although counsel attempted to procure the shortest sentence possible for Petitioner, there is no evidence that counsel misled Petitioner.  The state court found nothing in the record to indicate that counsel promised Petitioner that he would definitely receive a sentence of fewer than ten years if he provided substantial assistance.  Further, Petitioner indicated *under oath* that he had not been promised anything for his plea, and at the sentencing hearing, counsel twice stated on the record that Petitioner was facing at least ten years and that it might be in Petitioner's best interest to withdraw his plea and proceed to

trial. Therefore, this court cannot conclude that counsel's performance was not "reasonable considering all the circumstances."

Moreover, even if Petitioner could show that his counsel did tell him that he would receive fewer than ten years, and therefore that his counsel's performance was deficient, Petitioner cannot show prejudice.  Petitioner has not demonstrated a reasonable possibility that he would not have taken the plea if not for his counsel's alleged advice.  As noted by the state court, at the plea hearing, Petitioner acknowledged *under oath* that his plea was straight-up to the judge, that he realized the court could sentence him to the maximum sentence for each count, and that the sentences could run consecutively.  Further, Petitioner was informed on the record that the State would recommend ten years.  At the sentencing hearing, Petitioner was informed on the record by both his counsel and the court that he was facing a minimum of ten years.  Despite this, Petitioner refused the judge's offers to consider allowing Petitioner to withdraw his plea.  Moreover, Petitioner does not even allege in the instant petition that he would not have entered a plea, nor does he seek to withdraw his plea; rather, he simply asks for a sentence reduction.  Therefore, Petitioner has not come forth with objective evidence showing that, but for counsel's performance, Petitioner would not have accepted the plea offer and would have insisted on going to trial.

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the Rule 3.850 court's conclusion—that Petitioner's claim of ineffective assistance of counsel was without merit—was contrary to or an unreasonable application of Supreme Court law.   Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 21st day of December 2006.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**